# THE PEOPLE OF THE STATE OF CALIFORNIA *ex. rel.* THE STATE BOARD OF HARBOR COMMISSIONERS *v.* THE STEAMER AMERICA.

ADMIRALTY JURISDICTION.—A cause of action, to be cognizable in admiralty, whether arising out of contract, claim, service or obligation, or liability of any kind, must relate to the business of commerce and navigation.

IDEM—MODE OF RAISING ISSUE ON.—The only mode of raising issue on the jurisdiction of a State Court, on the ground that the cause of action pending therein belongs to maritime jurisdiction, is by presenting in the pleadings the essential facts showing such cause to relate to the business of commerce and navigation.

IDEM—WHERE THE STATE IS PLAINTIFF.—Whether a State Court would not hold its jurisdiction of an action brought in the name of the People and in aid of the public revenues of the State, even though the cause of action related to the business of commerce and navigation, suggested, but not decided.

POWER OF HARBOR COMMISSIONERS—ACTIONS *in rem.*—The provisions of section two of the Act approved March 5th, 1864, (Stats. 1863–4, p. 139,) are sufficient to authorize the Harbor Commissioners of San Francisco to institute actions *in rem*, as provided in section three hundred and seventeen of the Practice Act, and generally to pursue all remedies that a private person could under the same circumstances.

IDEM—WHARFAGE, ETC., COLLECTABLE IN GOLD AND SILVER COIN.—The provisions of section eleven of said Act, (Stats. 1863–4, p. 144,) which provide for the collection of " all tolls, dockage, and wharfage charges authorized and required to be collected, shall be due and collectable exclusively in gold and silver money of the United States," do not come within the provisions of the Specific Contract Act; but as charges upon property to raise money for public purposes, they do come within the principles laid down in *Perry* v. *Washburn*, 20 Cal. 350, and are valid.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The defendant demurred to the complaint; the demurrer was overruled, and on the trial plaintiff had judgment as prayed for in the complaint. The defendant appealed.

The other facts are sufficiently stated in the opinion of the Court.

*J. B. Manchester*, for Appellant.

The statute law of the State of California, under which this action is brought, giving to the common law Courts of this State admiralty jurisdiction, is unconstitutional. (See

Civil Pr. Act, Sec. 317.)   The following authorities are cited
to sustain this point, namely: Const. U. S., Art. III, Sec. 2;
Judiciary Act of 1789, 1, U. S. Stats. at Large, 76, 77;
Brightly's Dig. 24; *Stratton* v. *Jarvis,* 8 Pet. 11; *Davis* v.
*The New Brig,* 1 Gilpin, 473; *Zane* v. *The Brig President,* 4
Wash. C. C. 453; *Ashbrook* v. *The Golden Gate,* 1 Newberry,
296; *Gelston* v. *Hoyt,* 3 Wheat. 246; *The New Jersey Steam
Navigation Company* v. *Merchants' Bank,* 6 How. 390; *Slocum*
v. *Mayberry,* 2 Wheat. 9; *The Bark Chausan,* 2 Story, 455;
*The Phebe,* Ware, 324; *Johnson* v. *McDonough,* 1 Gilpin, 105;
Conkling's Treatise, 3d Ed. 236; *Gibbons* v. *Ogden,* 9 Wheat.
1–240; Webster's Works, Vol. VI, 15; *The Steamer Moses
Taylor,* plaintiff in error v. *Wilson Hammons,* defendant in
error.

This case was decided at the present term of the Supreme
Court of the United States, and the decision is entirely con-
clusive upon this point.

This law is liable to the further objection that it is a direct
and palpable interference with the commercial regulations of
the country, which, by the Constitution, are *exclusively* vested
in the National Government.   (Const. U. S., Art. I, Secs. 8,
10; *Gibbons* v. *Ogden,* 9 Wheat. 1–240; *Holmes* v. *Jennison,* 14
Pet. 570; *Groves* v. *Slaughter,* 15 Pet. 11; *New York* v. *Miles,*
11 Pet. 158; *Brown* v. *State of Maryland,* 12 Wheat. 419;
*Smith* v. *Turner,* 7 How. 283, 573; *Almy* v. *State of California,*
24 How. 169; *Houston* v. *Moore,* 5 Wheat. 23; Webster's
Works, Vol. IV, 492, 495, 496—Vol. VI, 11; *People* v. *Dow-
ner,* 7 Cal. 196; *Mitchell* v. *Steelman,* 8 Cal. 363; *Lin Sing*
v. *Washburn,* 20 Cal. 534; *Brumagim* v. *Tillinghast,* 18 Cal.
265.)

If the statute law of the State, under which this action
is brought, be constitutional, we then say that the Board
of State Harbor Commissioners have no authority given
them by law to institute actions *in rem,* in the name of the
People of the State of California.   (Stats. Cal. 1863–4, Sec.
2, p. 139; 1 Hittell, 499, Sec. 3,469; *Brandling* v. *Branding,*
6 Barn. & Cress. 467; Scdg. on Stat. and Const. Law, 261,

313; Flanders' Mar. Law, 1, 26; 2 Parsons' Mar. Law, 507, 514; *Ashbrook* v. *The Golden Gate*, 1 Newberry, 296.)    The Court erred in ordering a judgment in said cause payable in gold coin.    (Specific Contract Act, 2 Hittell, 745, Sec. 5,140; Stats. Cal. 1863, p. 687; *Curiac* v. *Abadie*, 25 Cal. 503; *Hathaway* v. *Brady*, 26 Cal. 583; *Wallace* v. *Eldredge*, 27 Cal. 495; *More* v. *Del Valle*, 28 Cal. 172; *Harding* v. *Cowing*, 28 Cal. 213.)

*Edward Tompkins*, for Respondent.

By section two of the Act, (See Stats. 1863–4, p. 139,) the Board of State Harbor Commissioners are authorized and directed to prosecute actions in the name of the People, for the recovery of wharfage and dockage.    The Practice Act, section three hundred and seventeen, *et seq.*, authorizes such actions to be brought directly against the vessel.    The Act of 1863–4, (Stats. 1863–4, p. 144,) makes all such charges payable in gold coin.

The Act authorizing actions to be brought against the vessel is constitutional.    (*Warner* v. *The Uncle Sam*, 9 Cal. 647; *Ord* v. *Uncle Sam*, 13 Cal. 369; *Sheldon* v. *Uncle Sam*, 18 Cal. 562.)

By the Court, Rhodes, J.:

The complaint states that the defendant is indebted to the plaintiffs for the wharfage of the defendant, at the wharf of the plaintiffs, in the City of San Francisco, in a certain sum, and that sum is, by law, payable in gold coin.

The defendant's counsel presents the point that the statute under which the action is brought (Sec. 2 of Water Front Act of 1864, Stats. 1863–4, p. 139) is unconstitutional.    The ground taken is that this is a case of admiralty and maritime jurisdiction, and that " as the Judiciary Act of 1789, passed in pursuance of section two of Article III of the Constitution of the United States, provides that the District

Courts * * * shall have exclusive original cognizance
of all civil cases of admiralty and maritime jurisdiction,"
etc., the Legislature of this State was without power to
confer upon its own Courts jurisdiction of such cases.
Before this point can be reached, it must be determined
that this is a case of admiralty and maritime jurisdiction.
It is said by Mr. Conkling (1 Conkling on Adm. 19) that
" the admiralty jurisdiction, in cases of contract, depends
primarily upon the nature of the contract, and is limited to
contracts, claims and service purely maritime, and touching
rights and duties appertaining to commerce and navigation."
(See *De Lovio* v. *Boit*, 2 Gall. 398; *The Thomas Jefferson*, 10
Wheat. 428; and other cases cited.) A cause of action, to
be cognizable in admiralty, whether arising out of a con-
tract, claim, service or obligation, or liability of any kind,
must relate to the business of commerce and navigation.

The defendant's counsel, in stating the facts of the case,
says that " the action is brought to recover wharfage while
the steamer was engaged in navigating the high seas, and
conveying passengers and freight to and from this port and
ports in Central America." But it does not appear from the
complaint that the steamer was engaged in commerce and
navigation. This fact, or one of similar import, must be
stated in the pleadings, in order to make a case falling
within the admiralty and maritime jurisdiction. The Court
cannot take judicial notice that a vessel found at a wharf is
engaged in navigating the high seas, or the navigable inland
waters of the State, or is employed in trade, commerce or
navigation, of any sort or in any manner. That is a fact of
jurisdictional consequence, and must be expressly alleged or
be necessarily inferable from the other facts alleged. The
precedents of libels in admiralty, although " there is no
special custom extant" with respect to their form, state this
fact, and it is very generally found in all the reported cases.
This fact not appearing in the case, the question presented
by the defendant's counsel does not arise.

It is objected that the Harbor Commissioners have no

authority to institute actions *in rem* in the name of the People. Section two of the Act of 1863–4 provides that "the said Commissioners are hereby authorized and empowered, in the name of the People of the State of California, to institute actions at law and in equity for the possession of any wharf * * * or for the recovery of the tolls, dockage, rents and wharfage thereof." The words are comprehensive enough to include all the remedies that a private person could have under the same circumstances, and there are no words in the Act, and nothing in the nature of the cause of action, indicative of a restriction to certain remedies to the exclusion of others provided by law. We see no ground for holding that the Commissioners are not entitled to avail themselves of the remedy against the steamer provided by section three hundred and seventeen of the Practice Act. The proceeding is similar to that adopted in *The Hine* v. *Trevor*, 4 Wal. 555, which, it was said, was "a remedy partaking of all the essential features of an admiralty proceeding *in rem*." In that case one question was, whether the remedy adopted was one falling within the clause of the ninth section of the Judiciary Act of 1789, which "saves to suitors in all cases the right of a common law remedy." It was not held that the form of the remedy adopted would make a case within the admiralty jurisdiction; but the Court having determined, from the facts of the case, that it was one of admiralty cognizance, considered that the remedy was not within the saving clause of that section. In cases not within the jurisdiction of the admiralty Courts, there can be no question that the Legislature may devise or adopt any form of remedy. Had the plaintiffs desired a decision on the jurisdictional questions presented on the part of the defendant, the fact that the steamer was engaged in commerce and navigation, as stated in the brief for the defendant, would have been admitted by the plaintiffs; and had that fact appeared in the case or been admitted by counsel, there would have been no difficulty in determining whether the case was within the authority of *The Hine* v. *Trevor*. To

avoid misapprehension, we add that if the fact in question would bring a case instituted by a private person within the admiralty jurisdiction, it would not necessarily follow that the same result would ensue when the State is plaintiff and the cause of action is of the nature of the one before us, as explained in the next point.

The third point is, that the Court erred in ordering judgment in gold coin. It is provided by section eleven of the Water Front Act that "All tolls, dockage and wharfage charges, by this Act authorized and required to be collected, shall be due and collectable exclusively in gold and silver money of the United States."

The case does not fall within the provisions of the Specific Contract Act, as there was no contract in writing for the payment of the wharfage. The several sums required to be paid for dockage, wharfage, etc., are in the nature of public revenue. The funds are raised and appropriated by the Government for the purpose of constructing wharves and other works for the protection and improvement of the harbor of San Francisco, and to aid and facilitate commercial intercourse between this and other ports. The enterprise was set on foot for public benefit, and is one in which the public are interested, and was undertaken and carried on by the State in her sovereign capacity, and not as a mere private proprietor. The tolls, dockage and wharfage charges provided for in that section, are levied under the same authority as license, poll and *ad valorem* taxes, and, in our opinion, they are charges upon the property, to raise money for public purposes, within the principles laid down in *Perry* v. *Washburn*, 20 Cal. 350.

The liability for the payment of such charges does not arise out of contract, or, if so in any manner, only in the remote degree that it does in case of license taxes. They are dues to the public treasury, and, as such, it was competent to the Legislature to make them payable in coin, or

legal tender notes, or in money generally. (See *State Treasurer* v. *Collector of Sangamon County*, 28 Ill. 509.)

Judgment affirmed.